

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 28, 2024**

_____

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 12-43804-ELM |
| REGINA NACHAEL HOWELL FOSTER, | § | |
| | § | Chapter 7 |
| Debtor. | § | |

### MEMORANDUM OPINION AND ORDER
(Resolves Docket Nos. 570 and 602)

Before the Court in this case is what the Court trusts will be the last chapter of a decade-long battle between Regina Nachael Howell Foster (the "**Debtor**"), the chapter 7 debtor, and Areya Holder n/k/a Areya Holder Aurzada (the "**Trustee**"), the previously appointed chapter 7 trustee of the Debtor's bankruptcy estate – specifically, the Trustee's Vexatious Litigant Motion[1] pursuant to which the Trustee requests the Court's entry of an order labeling the Debtor a vexatious litigant and enjoining her, both individually (including by and through any counsel) and on behalf of her children or otherwise, from hereafter filing any pleading that seeks affirmative relief against the

---

[1] *See* Docket No. 570 (the "**Vexatious Litigant Motion**").

Trustee or any of her attorneys in any court or tribunal without first obtaining this Court's permission. At the time of the filing of the motion back in 2020, the Debtor opposed the requested relief on a variety of grounds.

### *INTRODUCTORY OVERVIEW*

The long-standing feud between the Debtor and the Trustee emanates out of a dispute involving the character and ultimate disposition of three parcels of real property scheduled by the Debtor as non-exempt property: the Lancaster Property, the Edgewood Property, and the Powell Property (collectively, the "**Properties**").[2] In the midst of a divorce from her husband Carlos Foster ("**Carlos**"), the Debtor locked in on the value of the Properties as a potential source of income for herself and her then-minor children. As further detailed below,[3] when things did not go as desired for the Debtor, she embarked upon a persistent, repetitive pattern of attacking all actions proposed by the Trustee in administering the Properties and their sales proceeds. Once those challenges failed, in a final act of desperation the Debtor impermissibly and ill-advisedly filed suit in Texas state court to pursue claims against the Trustee and her counsel for allegedly conspiring to deprive the Debtor of her property rights. Those claims were removed to this Court and eventually dismissed.

Following removal of the claims (but prior to their dismissal), the Trustee filed the Vexatious Litigant Motion. While an evidentiary hearing on the motion was held in late 2020, the Court elected to abate the matter pending the outcome of all appeals from the Court's dismissal of

---

[2] The Lancaster Property was certain commercial real property located at 4716 E. Lancaster Avenue, Fort Worth, Texas 76103; the Edgewood Property was certain commercial real property located at 421 S. Edgewood Terrace, Fort Worth, Texas 76103; and the Powell Property was certain rental real property located at 936 E. Powell Avenue, Fort Worth, Texas 76103.

[3] *See also Foster v. Holder*, Adversary No. 19-04131, 2020 WL 6390671 (Bankr. N.D. Tex. Oct. 30, 2020), *aff'd*, 2022 WL 160240 (N.D. Tex. 2022), *aff'd*, 2023 WL 20872 (5th Cir.), *cert. denied*, 144 S. Ct. 332 (2023).

the removed claims.[4]  In late December 2023, the period of abatement came to an end after the dismissal order had been affirmed by the District Court and Fifth Circuit Court of Appeals, and the United States Supreme Court had denied further review.[5]  At that point, given the passage of time and the absence of any new litigation commenced by the Debtor, the Court conducted two different status conference hearings to determine if the Vexatious Litigant Motion was moot.  The Debtor failed to appear at both hearings.  The Trustee, through counsel, announced the Trustee's intent to continue to prosecute the motion.

Thus, having now reviewed and considered the parties' respective pleadings,[6] the evidentiary record in this matter, and the entire docket of this case, for reasons more fully set out below, the Court declines to grant the relief requested by the Trustee, finding it to be unnecessary.  Such denial, however, is without prejudice to the Trustee having the right to re-urge the request should any further litigation be initiated by or at the direction of the Debtor against the Trustee or any of her attorneys on account of any actions taken by them in connection with the Trustee's administration of the Debtor's estate.

### *FACTUAL BACKGROUND*

*A.*    *The Debtor's Bankruptcy and Divorce Filings and the Property Ownership Dispute*

On July 2, 2012, in the face of an impending foreclosure of her home, the Debtor initiated her chapter 7 bankruptcy case.  The Trustee was appointed to serve as trustee of the Debtor's bankruptcy estate.

---

[4] *See* Docket No. 613 (order of abatement).

[5] *See* Docket No. 628 (order terminating abatement).

[6] In particular, the Vexatious Litigant Motion [Docket No. 570], the Debtor's response thereto [Docket No. 571], the Debtor's motion to dismiss the Vexatious Litigant Motion [Docket No. 602], the Trustee's objection thereto [Docket No. 605], and the Debtor's reply [Docket No. 606].

Four days later, on July 6, 2012, the Debtor initiated a divorce action against Carlos in Texas state court (the "**Family Court**").[7]  The divorce was highly contentious.  During the early stages of the case, a dispute arose between the Debtor and Carlos with respect to ownership of the Properties.  Carlos claimed that the Properties constituted his separate property because they were allegedly acquired in the name of a corporation that Carlos had organized prior to his marriage to the Debtor, of which he was the sole shareholder.  The Debtor, on the other hand, claimed that the Properties constituted the couple's community property because they were acquired during the time of their marriage and the corporation allegedly served as nothing more than the alter ego of Carlos.  Thus, on October 12, 2012, the Debtor filed amended schedules in the bankruptcy case to list the Properties as non-exempt real estate in which she claimed a community property interest.[8] While it would later be discovered that the corporation had forfeited its charter, Carlos continued to assert a separate property interest in the Properties.

On November 15, 2012, the Debtor obtained her bankruptcy discharge.[9]  With the discharge in hand, the Debtor was of the belief that all that remained to be done in the bankruptcy case was "to administer non-exempt assets, the most significant of these being the Properties."[10]  In other words, at the time of her discharge, the Debtor acknowledged that the Properties constituted property of the bankruptcy estate to be administered by the Trustee.[11]  With that in mind, on November 21, 2012, the Trustee filed an application in the case to request the Court's approval of her engagement of the law firm Singer & Levick, P.C. ("**SLPC**") to assist in analyzing Carlos'

---

[7] *See* Trustee Exh. 88.

[8] *See* Trustee Exh. 2, at p.2 (amended Schedule A, listing the Debtor's claimed ownership interest in the Properties, which are identified as community property).

[9] *See* Trustee Exh. 3.

[10] *See* Trustee Exh. 10, ¶ 3.

[11] *See also* Trustee Exh. 17, ¶ 42 (identifying the Properties as non-exempt estate property).

conflicting claim to ownership of the Properties and any associated family law issues on account of the pending divorce.[12]  The engagement was approved by the Court.[13]

**B.**    ***The Trustee's Initial Proposed Sale of the Properties;***
***Disintegration of the Debtor-Trustee Relationship***

After several months of investigation, analysis, and discussion with both the Debtor and Carlos, the Trustee filed a motion on October 11, 2013, to request the Court's approval of a sale of the estate's interest in the Properties for $200,000, subject to all existing liens, claims, and encumbrances (including Carlos' conflicting ownership claim).[14]  The kicker was that the Trustee proposed to sell the Properties to an entity owned or controlled by Carlos' mother.  Believing the Properties to have a value closer to $700,000 than $200,000, the Debtor was distraught with the Trustee's proposal, particularly given the proposed purchaser's connection to Carlos. Consequently, the Debtor objected to the sale.[15]  A hearing on the motion was set for December 3, 2013.

Ultimately, the Trustee's refusal to back down from the proposed sale served as the spark that dismantled the Debtor's relationship with the Trustee.  Having lost faith in the Trustee and desperate to recover a means to support herself and her children, the Debtor filed a "*Motion for Relief from Automatic Stay, or in the alternative, Appoint a Receiver*" (the "**Lift Stay Motion**") to request a modification of the automatic stay to permit the Family Court to determine how the interests in the Properties should be divided.  Alternatively, the Debtor sought the Court's appointment of a receiver to examine the financial condition of the Properties and the books and

---

[12] *See* Docket No. 54, ¶ 4.

[13] *See* Docket No. 57.

[14] *See* Docket No. 68.

[15] The Debtor filed objections in both her individual capacity and as next friend of her then-minor children. *See* Docket Nos. 69 and 70.  As explained later, the Debtor had filed a proof of claim on behalf of her children in the bankruptcy case to assert a claim by the children *against herself*.  *See* Proof of Claim No. 8.

records in relation thereto before determining whether to approve the proposed sale.[16]  The Trustee

filed an objection to the Lift Stay Motion.[17]

Eventually, the Court denied both the Debtor's Lift Stay Motion *and* the Trustee's sale

motion.[18]  In the former case, having failed to obtain relief from the automatic stay to enable the

Family Court to make all further decisions with respect to disposition of the Properties and

believing that the bankruptcy process was not only impermissibly interfering with her own rights

in the divorce action, but also her children's rights, on February 21, 2014, the Debtor filed a

"*Motion of Foster Children, Parties in Interests [sic] By and Through Next Friend, Pro Se to

Withdraw the Reference to the Bankruptcy Court, Motion for Mandatory Abstention by the District

Court, & Motion to Remand to State Court.*"[19]  As reflected by the title of the motion, the Debtor

purported to file the motion on behalf of her children.  For standing purposes, the Debtor had

previously filed a somewhat perplexing proof of claim in the bankruptcy case on behalf of her

children to assert the children's alleged $8,213.07 claim *against herself* for "breach of fiduciary

duty/tax payment" (the "**Children's Claim**").[20]   Thus, pursuant to the reference withdrawal

motion, the Foster children (acting through the Debtor) effectively sought to have the District

Court withdraw the referral of the bankruptcy case to this Court and to then have the District Court

enter its own order "remanding" all further decision-making with respect to disposition of the

---

[16] *See* Trustee Exh. 10.

[17] *See* Trustee Exh. 12.

[18] *See* Trustee Exhs. 11 and 13.  The Debtor appealed the order denying the Lift Stay Motion, but the appeal was later dismissed for want of jurisdiction because of its untimeliness.  *See* Trustee Exhs. 15, 16 and 100.

[19] *See* Trustee Exh. 17.

[20] *See* Proof of Claim No. 8.

Properties to the Family Court.  The Trustee opposed the request.[21]  On May 14, 2014, the District

Court signed an order denying the reference withdrawal motion.[22]

C.      *The Trustee Commences Litigation to Remove the Cloud on Title;*
       *Infighting Between the Debtor and Trustee Escalates*

Separately, in light of the Court's denial of the sale motion, the Trustee determined that the

best path forward to facilitate a sale of the Properties was to resolve the ownership dispute with

Carlos.  Thus, on May 22, 2014, the Trustee filed suit against Carlos and his corporation to request

entry of a declaratory judgment determining the Properties to constitute property of the estate (the

"**Declaratory Judgment Action**").[23]  The Trustee also made a formal appearance in the divorce

action to ensure that she was kept abreast of developments in the case and could be heard before

any action was taken in respect of the Properties.

At this point, believing that the Trustee was improperly interfering with the Family Court's

division of marital property and ability to provide spousal and child support, on October 15, 2014,

the Debtor filed, on behalf of her children, the children's "*Motion to Remove Trustee for Cause*

*Pursuant to 11 U.S.C. § 324*" (the "**Trustee Removal Motion**").[24]  And on October 28, 2014, the

Debtor filed her own "*Motion for Conversion of Chapter 7 to Chapter 11 Pursuant to 11 U.S.C. §*

*706(a)*" (the "**Conversion Motion**") to request conversion of her bankruptcy case to a case under

chapter 11 of the Bankruptcy Code.[25]  In each case, the obvious purpose of the filings was to seek

---

[21] *See* Trustee Exh. 18.

[22] *See* Trustee Exh. 20.  The Debtor appealed the order, but the appeal was later dismissed in January 2015.  *See* Docket No. 342.

[23] *See* Trustee Exh. 89 (complaint in Adversary No. 14-4054).

[24] *See* Trustee Exh. 22.

[25] *See* Trustee Exh. 24.

the removal of the Trustee from any further control of the bankruptcy estate.  The Trustee filed responses in opposition to both motions.

Separately, on November 25, 2014, having grown weary of actions being taken by the Debtor in the name of her children predicated upon the specious bankruptcy claim that the Debtor had filed on their behalf, the Trustee filed an objection to allowance of the Children's Claim.[26]  The Debtor filed a response in opposition on behalf of the children.[27]

On December 23, 2014, the Court entered orders denying both the Trustee Removal Motion and the Conversion Motion.[28]  The Debtor appealed both orders (on behalf of the children in the case of the order denying the Trustee Removal Motion).[29]

Shortly thereafter, on January 29, 2015, while the appeals were pending, the Court entered an order sustaining the Trustee's objection to allowance of the Children's Claim.[30]  Thus, with that order in hand, the Trustee then sought dismissal of the children's appeal of the order denying the Trustee Removal Motion, which the District Court granted in March 2015.[31]  Separately, the order denying the Conversion Motion was affirmed on appeal to both the District Court and the Fifth Circuit Court of Appeals.[32]

Returning to the Declaratory Judgment Action, in order to resolve the ultimate question of whether the Properties constituted property of the bankruptcy estate, the Court would have to

---

[26] *See* Trustee Exh. 28.

[27] *See* Trustee Exh. 32.

[28] *See* Trustee Exhs. 29 and 30.

[29] *See* Trustee Exh. 31; Docket No. 233.

[30] *See* Trustee Exh. 38.  The Debtor filed an appeal on behalf of the children.  *See* Trustee Exh. 39.  On appeal, the District Court affirmed the order, *see* Trustee Exhs. 43 and 44, and thereafter on further appeal, the Fifth Circuit Court of Appeals dismissed the appeal as frivolous for failure to include a trial transcript.  *See* Trustee Exhs. 49 and 50.

[31] *See* Trustee Exh. 40.  On further appeal to the Fifth Circuit Court of Appeals, the appeal was dismissed as frivolous. *See* Trustee Exhs. 47 and 48.

[32] *See* Trustee Exhs. 103 and 46.

determine whether the Properties constituted Carlos' separate property or the couple's community property, and if community property, whether such community property was, among other things, solely managed by Carlos – questions inherently dependent upon Texas family law.[33]  Thus, being sensitive to the interplay of Texas state law and the infighting taking place between the parties, on January 20, 2015, the Court entered an order of abatement (coupled with relief from the automatic stay) in the Declaratory Judgment Action to enable the Debtor and Carlos to return to the Family Court and request the Family Court to make these isolated separate property/community property and community property management (if applicable) determinations.[34]

For more than two years, no such determination was made by the Family Court.  Ultimately, the divorce action was dismissed for want of prosecution.[35]  Thus, on motion of the Trustee, the Court terminated the period of abatement and set the Declaratory Judgment Action for trial.[36] Thereafter, following a trial on June 13, 2017, the Court entered a judgment in favor of the Trustee, determining the Properties to constitute property of the bankruptcy estate (the "**Property Ownership Judgment**").[37]  The Property Ownership Judgment was not appealed.

### D.    *The Trustee Renews Her Efforts to Sell the Properties*

With the Property Ownership Judgment in hand, the Trustee renewed her efforts to sell the Properties.  On August 8, 2017, the Trustee filed a motion to sell the Lancaster and Edgewood Properties for $475,000.[38]  In response, the Debtor objected, arguing for the first time that the

---

[33] *See* 11 U.S.C. § 541(a)(2)(A) (providing that community property constitutes property of the estate if under the sole, equal, or joint management and control of the debtor); *see also* Tex. Fam. Code §§ 3.001-3.003 and 3.102.

[34] *See* Trustee Exh. 90.

[35] After the dismissal, the Debtor initiated a new divorce action with the Family Court.

[36] *See* Trustee Exh. 92.

[37] *See* Trustee Exh. 93.

[38] *See* Trustee Exh. 53.

properties did *not* constitute property of the estate under section 541(a)(2) of the Bankruptcy Code despite her earlier assertions to the contrary and despite the Property Ownership Judgment. Predicated upon such assertion, the Debtor argued that the Court lacked jurisdiction to approve the sale.[39]  On September 13, 2017, the Court conducted a hearing on the motion, at which time the Court indicated that the objection would be overruled and the sale would be approved.[40]  On October 2, 2017, the Court entered the sale order.[41]  The sale order was not appealed.

Thereafter, on December 6, 2017, the Trustee filed a motion to sell the Powell Property for $79,000.[42]  Once again the Debtor objected, similarly arguing that the Powell Property did not constitute property of the estate under section 541(a)(2) of the Bankruptcy Code and, therefore, that the Court lacked jurisdiction to approve the sale.[43]  The Court overruled the objection and on January 17, 2018, entered an order approving the sale.[44]  This sale order was also not appealed.

**E.      *The Debtor Attempts to Restrict the Trustee's Use of the Sales Proceeds***

Once the sales had closed, the Trustee set her sights on wrapping up administration of the estate and closing the bankruptcy case.  In conjunction with such efforts, on March 19, 2018, SLPC filed its final fee application in the case.[45]  The Debtor filed an untimely objection to the application.[46]  Predicated upon the same argument that the Properties did not constitute property

---

[39] *See* Docket No. 408.

[40] Of note, following the hearing, but prior entry of the sale order, the Debtor attempted to remove the presiding judge at the time (Judge Russell Nelms) by filing a motion to recuse.  *See* Trustee Exh. 50.  The Court denied the motion. *See* Trustee Exh. 52.

[41] *See* Trustee Exh. 54.  Thereafter, the Debtor's request for reconsideration of the order was denied, *see* Trustee Exh. 59, and request for a stay of the order was denied.  *See* Docket No. 456.

[42] *See* Trustee Exh. 60.

[43] *See* Trustee Exh. 61.

[44] *See* Trustee Exh. 62.

[45] *See* Trustee Exh. 63.

[46] *See* Trustee Exh. 64.

the estate under section 541(a)(2) of the Bankruptcy Code, the Debtor claimed that the Court lacked jurisdiction to award any fees and expenses to SLPC that would be paid from the sales proceeds. The Debtor also objected on the basis of the American Rule,[47] arguing that the Trustee and SLPC were attempting to implement impermissible fee shifting, and also on the basis of fraud on the court, arguing that the Trustee and SLPC had fraudulently sought and obtained the Property Ownership Judgment in contravention of the provisions of section 541(a)(2) of the Bankruptcy Code.

Ultimately, the Court overruled the Debtor's objections, both on untimeliness grounds and on the basis of the recycled legal theory that the Court had ruled against the Debtor on several times. On April 24, 2018, the Court entered the order granting the SLPC application.[48] While the Debtor timely appealed the order, the appeal was later dismissed for want of prosecution.[49]

Thereafter, the Trustee filed her final report and fee application, both of which were approved by the Court,[50] and on September 27, 2018, the Court discharged the Trustee and closed the case.[51]

**F.    *The Debtor Repackages and Redeploys Her Jurisdictional and Conspiratorial Arguments in a Final Effort to Unwind the Property Ownership Judgment and Pursue Recovery of the Sales Proceeds Through the Assertion of Affirmative Claims***

On June 24, 2019, roughly two years after the Property Ownership Judgment had been entered and the Declaratory Judgment Action had been closed, the Debtor filed a motion in the Declaratory Judgment Action to request the Court's reopening of the adversary proceeding for the

---

[47] *See Baker Botts LLP v. Asarco LLC*, 576 U.S. 121, 126 (2015) (discussing American Rule).

[48] *See* Trustee Exh. 65.  The Debtor's request for reconsideration was also denied.  *See* Trustee Exh. 68.

[49] *See* Trustee Exh. 101.

[50] *See* Trustee Exhs. 70-74.

[51] *See* 9/27/2018 docket entry.

purpose of entering an order vacating the Property Ownership Judgment.[52]  Relying upon Federal

Rule 60(b)(4),[53] the Debtor again argued that the Court had no jurisdiction to enter the Property

Ownership Judgment because the judgment allegedly conflicted with the provisions of section

541(a)(2) of the Bankruptcy Code.[54]  The Court denied the motion.[55]

Thereafter, on July 10, 2019, the Debtor filed a motion in the bankruptcy case to request

the Court's reopening of the bankruptcy case for the purpose of granting the Debtor leave to file a

lawsuit against the Trustee for obtaining an allegedly void Property Ownership Judgment for the

purpose of illegally enabling compensation to be paid to herself and counsel.[56]  The Trustee filed

an objection in opposition to the motion.[57]  Following a hearing on August 1, 2019, the Court

denied the motion.[58]

Being undeterred by such denial, on November 7, 2019, the Debtor filed suit against the

Trustee, SLPC, and certain of the individual lawyers employed by SLPC (collectively, the

"**Trustee Parties**") in Texas state court (the "**State Court Action**") to pursue the same type of

claims that the Debtor had requested leave to pursue in her motion to reopen the bankruptcy case

(collectively, the "**Affirmative Claims**").[59]  This, then, caused the *Trustee* to request a reopening

of the bankruptcy case so that the Affirmative Claims could be removed from the state court to this

---

[52] *See* Trustee Exh. 75.

[53] *See* Fed. R. Civ. P. 60(b)(4) (providing relief from a judgment if the judgment is void); *see also* Fed. R. Bankr. P. 9024 (providing for application of Fed. R. Civ. P. 60 in adversary proceedings, subject to certain inapplicable exceptions).

[54] The Debtor also seemingly argued that the judgment was sought for the purpose of illegally facilitating the payment of compensation to the Trustee and her counsel in violation of 18 U.S.C. § 152(6).

[55] *See* Trustee Exh. 76.  While the Debtor appealed the order to the District Court, it was later dismissed for want of prosecution.  *See* Adversary No. 14-4054, Docket No. 74.

[56] *See* Trustee Exh. 79.

[57] *See* Docket No. 540.

[58] *See* Trustee Exh. 80.  The Debtor's request for reconsideration was also denied.  *See* Trustee Exh. 78.

[59] *See* Trustee Exh. 82.

Court.[60]  While previously the Debtor had supported a reopening of the bankruptcy case, this time the Debtor opposed the reopening.[61]  By order entered on December 13, 2019, the Court granted the motion to reopen.[62]

### G.        The Affirmative Claims are Removed and Thereafter Dismissed

Following entry of the reopening order, the Trustee Parties removed the Affirmative Claims to this Court, thereby initiating Adversary Proceeding No. 19-4131 (the "**Removed Claims Adversary**").[63]

Post-removal, the Debtor's first line of attack was to file two different motions to remand.[64] Then, shortly thereafter she filed a motion to request the District Court's withdrawal of the reference of the adversary proceeding, arguing that this Court had no jurisdiction to take any action with respect to the Affirmative Claims.[65]  In each of the motions, the Debtor persisted with the same non-property of the estate/lack of jurisdiction arguments that she had failed to prevail on since the time of the sale of the Properties.  The Trustee Parties opposed each of the motions.[66]

Separately, on January 17, 2020, the Trustee Parties filed a motion to request dismissal of each of the Affirmative Claims with prejudice or, alternatively, for judgment on the pleadings or summary judgment.[67]  Arguing that each of the Affirmative Claims was predicated on complained of actions that that had previously been approved directly or indirectly by prior orders of the Court,

---

[60] *See* Trustee Exh. 85.

[61] *See* Docket No. 558.

[62] *See* Docket No. 566.

[63] *See* Removed Claims Adversary, Docket No. 1; *see also* 28 U.S.C. § 1452(a) (permitting removal of claims and causes of action as to which bankruptcy jurisdiction exists under 28 U.S.C. § 1334).

[64] *See* Removed Claims Adversary, Docket Nos. 10 and 12.

[65] *See* Removed Claims Adversary, Docket No. 15.

[66] *See* Removed Claims Adversary, Docket Nos. 22, 23 and 30.

[67] *See* Removed Claims Adversary, Docket Nos. 27-29.

the Trustee Parties claimed that the Debtor had failed to state a claim for which relief could be afforded.  The Trustee Parties further argued that the claims were barred by the *Barton* doctrine due to the Debtor's failure to obtain leave to pursue the claims in state court[68] and that the Trustee Parties were protected under various theories of immunity.  The Debtor opposed the motion in all respects, continuing to re-urge the non-property of the estate/lack of jurisdiction arguments and claiming that her pursuit of the Affirmative Claims was not barred by the *Barton* doctrine because the Trustee Parties' actions were allegedly *ultra vires*.[69]

Ultimately, the remand motions were denied,[70] the reference withdrawal motion was denied by the District Court,[71] and on October 30, 2020, this Court entered an order granting the Trustee Parties' motion to dismiss the Affirmative Claims with prejudice.[72]  The dismissal order was thereafter affirmed by both the District Court and Fifth Circuit Court of Appeals[73] and the Debtor's request for further review by the United States Supreme Court was denied.[74]

---

[68] *See Barton v. Barbour*, 104 U.S. 126 (1881); *see also Foster v. Aurzada (In re Foster)*, No. 22-10310, 2023 WL 20872, at *5-*6 (5th Cir.) (discussing applicability of *Barton* doctrine to bankruptcy trustees), *cert. denied*, 144 S. Ct. 332 (2023).

[69] *See* Removed Claims Adversary, Docket No. 33; *see also Baron v. Sherman (In re Ondova Ltd. Co.)*, 914 F.3d 990, 993 (5th Cir. 2019) (discussing *ultra vires* exception to immunity protections).

[70] *See* Removed Claims Adversary, Docket Nos. 49, 20 and 51.  The Court did, however, grant the Debtor's request to remand certain claims that the Debtor had asserted against parties other than the Trustee Parties.

[71] *See* Removed Claims Adversary, Docket No. 46.  Following a hearing on the Trustee Parties' motion to dismiss, the Debtor filed an additional motion with the District Court to withdraw the reference.  *See* Removed Claims Adversary, Docket No. 63.  The District Court denied the additional motion as moot.  *See* Removed Claims Adversary, Docket No. 103.

[72] *See* Removed Claims Adversary, Docket Nos. 68 and 69.  The Debtor's motion for new trial was thereafter also denied.  *See* Removed Claims Adversary, Docket No. 104.

[73] *See* Removed Claims Adversary, Docket Nos. 133 and 136.

[74] *Foster v. Aurzada*, 144 S. Ct. 332 (2023).

### H.    The Vexatious Litigant Motion

On February 6, 2020, while all of the above-described Removed Claims Adversary motions were still pending, the Trustee filed the Vexatious Litigant Motion in the bankruptcy case.[75]  The Debtor filed a response in opposition to the motion the day after the motion was filed.[76]  The Court then set a scheduling conference with respect to the motion and directed the parties to file statements of position as to whether the case reopening order was broad enough to enable consideration of the Vexatious Litigant Motion.[77]  The parties timely complied.[78]

After considering the statements of position, the Court entered a supplemental case reopening order to make it clear that the reopening was broad enough to permit the filing and determination of the Vexatious Litigant Motion[79] and the motion was set for an evidentiary hearing on October 20, 2020.[80]  Thereafter, on September 11, 2020, the Debtor supplemented her response in opposition with a separately-filed motion to dismiss for lack of jurisdiction (the "**Jurisdictional Motion**").[81]  On October 5, 2020, the Trustee filed her response in opposition to the Jurisdictional Motion,[82] to which the Debtor replied.[83]

As explained in the introduction, while an evidentiary hearing on the Vexatious Litigant Motion was held in late 2020, the Court elected to abate the matter pending the outcome of all appeals of the Court's dismissal of the Affirmative Claims.  The abatement was terminated in late

---

[75] Docket No. 570.

[76] Docket No. 571.

[77] *See* Docket No. 591.

[78] *See* Docket Nos. 593 and 594.

[79] *See* Docket No. 603.

[80] *See* Docket No. 598.

[81] *See* Docket No. 602.

[82] *See* Docket No. 605.

[83] *See* Docket No. 606.

December 2023 after the dismissal order had been affirmed by the District Court and Fifth Circuit Court of Appeals, and the United States Supreme Court had denied further review.

### *DISCUSSION*

#### A.    *Jurisdictional Determination*

Initially, the Court must resolve the question of whether it has jurisdiction to determine the Vexatious Litigant Motion.  The Debtor has filed the Jurisdictional Motion to request dismissal of the motion for want of jurisdiction.

Bankruptcy jurisdiction is governed by section 1334 of title 28 of the United States Code, which provides that the district courts shall have original jurisdiction of, among other proceedings, all civil proceedings arising in bankruptcy cases (subject to certain exceptions that are inapplicable to this case).[84]  A civil proceeding "arises in" a bankruptcy case when it involves a claim or request for relief that is not expressly created by the Bankruptcy Code but nonetheless would have no existence outside of bankruptcy.[85]  With that in mind, here, the proceeding initiated by the Vexatious Litigant Motion is such an "arising in" proceeding.  The motion is tied to orders entered in and actions undertaken in connection with the Debtor's bankruptcy case and the relief sought is inextricably intertwined with the bankruptcy case inasmuch as it would have the effect of protecting the integrity of the Court's orders and protecting the Trustee Parties against any possible future litigation that the Debtor may wish to pursue in disregard of such orders and the protections afforded by the bankruptcy process.[86]

---

[84] *See* 11 U.S.C. § 1334(b).

[85] *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987); *Faulkner v. Lane Gorman Trubitt, LLC (In re Reagor-Dykes Motors, LP)*, Adversary No. 21-05002, 2021 WL 4823525, at *2 (Bankr. N.D. Tex. Oct. 13, 2021); *Lain v. Watt (In re Dune Energy, Inc.)*, 575 B.R. 716, 723 (Bankr. W.D. Tex. 2017).

[86] *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008).

Where "arising in" bankruptcy jurisdiction exists, the district court may refer the proceeding to the bankruptcy judges within the district for further disposition.[87]  The bankruptcy judge assigned to the matter may then determine such a matter on a final basis as a core proceeding.[88]  In the Northern District of Texas, the District Court has referred all such "arising in" proceedings to the bankruptcy judges of the district for further disposition.[89]  Thus, this Court has jurisdiction to hear and determine the Vexatious Litigant Motion on a final basis as a core proceeding.

The Debtor disagrees with such assessment pursuant to her Jurisdictional Motion, asserting three different reasons why the Court lacks jurisdiction.  Before turning to the three arguments, the Trustee asserts that it is wholly unnecessary for the Court to consider the Jurisdictional Motion because the Debtor presented it in the form of a motion under Rule 12(h) of the Federal Rules of Civil Procedure and Federal Rule 12(h) is inapplicable to main bankruptcy case contested matters governed by Rule 9014 of the Federal Rules of Bankruptcy Procedure.  The Court disagrees.  While it is true that the parties have treated the Vexatious Litigant Motion as a main case contested matter proceeding and Federal Rule 12(h) is not among the Federal Rules made applicable to contested matter proceedings (absent a directive from the court),[90] that does not thereby nullify the existence of the Debtor's motion, nor does it prevent the Court from considering the jurisdictional arguments

---

[87] *See* 28 U.S.C. § 157(a).

[88] *See id.* § 157(b).

[89] *See Miscellaneous Order No. 33: Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* (N.D. Tex. Aug. 3, 1984).

[90] *See* Fed. R. Bankr. P. 9014(c) (omitting Bankruptcy Rule 7012 (which, in turn, makes Federal Rule 12(h) applicable to adversary proceedings) from the list of adversary proceeding Bankruptcy Rules that are made applicable to contested matters).

made therein.  A jurisdictional challenge, which is not waivable,[91] is simply ordinarily made within an objecting party's response to a contested matter motion as opposed to within a separately filed motion.  Moreover, the Court has an independent obligation to determine if subject matter jurisdiction exists.[92]  Therefore, in evaluating jurisdiction, the Court will generally always consider any timely filed jurisdictional challenges, whether they be in the form of a response or a motion.

Returning, then, to the Debtor's arguments, the first argument made by the Debtor is that the Court lacks jurisdiction to consider the Vexatious Litigant Motion because it is connected to the Affirmative Claims of which, according to the Debtor, the Court does not have jurisdiction. The Debtor is wrong for two reasons.  First, the premise of the Debtor's argument is obviously incorrect.  Not only did this Court determine that it had jurisdiction of the Affirmative Claims, but both the District Court and Fifth Circuit Court of Appeals determined that this Court had such jurisdiction.[93]  Second and more importantly, while rulings made in relation to the Affirmative Claims are relevant to an evaluation of the *merits* of the Vexatious Litigant Motion, they have no bearing upon the question of the Court's subject matter jurisdiction *of the Vexatious Litigant Motion*, itself.  Thus, the Debtor's first challenge to jurisdiction will be overruled.

Second, focusing on constitutional standing as a component of jurisdiction,[94] the Debtor asserts that the Trustee is nothing more than a general representative of the creditors in the case and, thus, jurisdiction is dependent upon the Trustee establishing that the represented creditors, themselves, would have had standing to pursue the motion – *i.e.*, that *they* are the ones who suffered

---

[91] *United States v. Cotton*, 535 U.S. 625, 630 (2002); *see also Edge Petroleum Operating Co., Inc. v. GPR Holdings, LLC (In re TXNB Internal Case)*, 483 F.3d 292, 298 n.6 (5th Cir.), *cert. denied sub nom. Edge Petroleum Operating Co., Inc. v. Duke Energy Trading & Mktg. LLC*, 552 U.S. 1022 (2007).

[92] *See Arbaugh v. Y&H Corp*., 546 U.S. 500, 514 (2006); *see also Lopez v. Trujillo*, 475 B.R. 550, 555 (N.D. Tex. 2012).

[93] *See Foster*, 2023 WL 20872, at *2-*3.

[94] *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

actual injury capable of redress.  In this regard, focusing again on the Affirmative Claims, the Debtor asserts that the claims will have no impact on any of the creditors; therefore, the Trustee lacks standing.  The Debtor's analysis is misguided and too myopic.

The Trustee was not simply a disconnected party representative within the bankruptcy process.  As the Debtor well knows, the Trustee was an active participant having individualized rights and obligations in her capacity as the trustee.  Indeed, the Debtor's very own actions in persistently challenging the Trustee's requests for relief in the bankruptcy case and then filing suit against her after the case was closed conclusively evidences the individualized interest that the Trustee has in pursing the relief sought pursuant to the Vexatious Litigant Motion – relief which is capable of providing redress for the complained of injury suffered by the Trustee, herself (*e.g.*, the time and expense of defending litigation pursued against the Trustee).  With respect to the Trustee's inclusion of the other Trustee Parties within the scope of relief requested pursuant to the Vexatious Litigant Motion, because of their role as counsel for the Trustee throughout the bankruptcy proceedings and the direct and indirect impact that any litigation against any one or more of them will have on the Trustee and her prior administration of the estate, the Trustee has a similar redressable interest that is sufficient to establish standing in relation to the relief sought for the benefit of the other Trustee Parties.  Accordingly, the Debtor's second challenge to jurisdiction will also be overruled.

Finally, the Debtor claims that the Court lacks jurisdiction to issue any order that would prevent the taking of action in another court because such exercise of power is precluded by the Anti-Injunction Act of 28 U.S.C. § 2283.  Section 2283 provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effective its

judgments."[95]  Here, the Debtor misses the mark for two reasons.  First, in continuing to focus on the Affirmative Claims from the State Court Action, once the claims were removed to this Court, any action taken in relation to them had no impact on the Texas state court because the Affirmative Claims were no longer part of the state court proceeding – they existed exclusively within the Removed Claims Adversary pending before this Court.  Second, the Trustee is not attempting to obtain an order that would stay any *existing* state court proceedings.  Instead, she is seeking an order that would *prospectively* enjoin the Debtor from commencing any *new* litigation in any forum without first obtaining permission from this Court.  The Fifth Circuit Court of Appeals has previously upheld the exercise of jurisdiction to implement such relief under appropriate circumstances.[96]  Therefore, the Debtor's final jurisdictional argument will also be overruled.

## B.      *Evaluation of Requested Vexatious Litigant Relief*

Turning to the merits of the Vexatious Litigant Motion, it has long been recognized that "[f]ederal courts … have authority to enjoin vexatious litigants under the All Writs Act, 28 U.S.C. § 1651.  Moreover, under 11 U.S.C. § 105, 'a bankruptcy court can issue any order … necessary or appropriate to carry out the provisions of the bankruptcy code.'"[97]  That said, "[a] pre-filing injunction", as requested by the Trustee, "'must be tailored to protect the courts and innocent

---

[95] 28 U.S.C. § 2283.

[96] *See Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) ("[I]t is widely accepted that federal courts possess power under the All Writs Act to issue narrowly tailored orders enjoining repeatedly vexatious litigants from filing future state court actions without permission from the court.  We have upheld an order enjoining a litigant from bringing any future litigation on any claim arising from a particular fact situation, where the litigant was abusing the court system by harassing his opponents.") (citations omitted), *cert. denied sub nom. Fleming & Assocs., LLP v. Fastow*, 537 U.S. 1191 (2003).

[97] *Carroll v. Abide (In re Carroll)*, 850 F.3d 811, 815 (5th Cir. 2017) (citation omitted) (quoting *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997)); *see also* 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); *id.* § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]").

parties, while preserving the legitimate rights of litigants.'"[98]   Consequently, in determining whether to impose a pre-filing injunction, among the relevant factors to consider are the following: "(1) the party's history of litigation, in particular whether [s]he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions."[99]   Accordingly, each of those factors is considered below.

   1.  The Debtor's History of Litigation With Respect to the Trustee Parties.  In relation to the Debtor's history of litigation, the Trustee points to the repetitive, duplicative actions taken by the Debtor to obstruct the Trustee's administration of the estate.  She asserts that the Debtor has simply refused to accept defeat on her non-property of the estate/lack of jurisdiction arguments and that, in initiating the Affirmative Claims against the Trustee Parties in the State Court Action after having had her request to reopen the bankruptcy case denied, the Debtor evidenced an intent to take the denial to an entirely new level of litigious harassment.  In her response (which was filed at a time when the Affirmative Claims were still pending), the Debtor somewhat unsurprisingly continued to assert that her arguments are not wrong, that void judgments and orders are never immune from attack, and that, therefore, she has every right to pursue relief on account of actions taken in procuring and relying upon an allegedly void judgment and void orders.

   Substantively, the Court finds the Debtor's pattern of litigious behavior to be troubling.  While as a general proposition and under appropriate circumstances, a void judgment or order may be collaterally attacked, that does not equate to open season for a litigant to perpetually challenge

---

[98] *Baum*, 513 F.3d at 187 (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986)).

[99] *Baum*, 513 F.3d at 189 (citing *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)).

any adjudication that the litigant believes to be void.  Instead, where a litigant was a party to the proceeding at issue or was provided notice and an opportunity to participate and be heard in the proceeding, the proper means to contest a judgment or order believed to be erroneous is through the appellate process.  Thereafter, once the appellate process has run its course, the final outcome must be respected under principles of finality in order for our judicial system to function in an efficient and meaningful manner.

With that in mind, here, after the Debtor had failed to avail herself of the opportunity to have the Family Court resolve the competing ownership claims to the Properties upon the Court's abatement of the Declaratory Judgment Action, the Court ended the abatement, tried the dispute itself, and entered the Property Ownership Judgment.[100]  Thereafter, being unhappy with the Trustee's continuing control of the Properties, the Debtor reversed course from her prior stance (*i.e.*, that the Properties were property of the bankruptcy estate) and actively contested the estate ownership determination in opposing both of the Trustee's motions to sell the Properties. Following the Court's overruling of the Debtor's objections and approval of the sales, the Debtor had the right to appeal each of the sale orders.  For whatever reasons, she appealed neither.  Thus, at that point in time, there were three different final orders that had determined the Properties to constitute property of the estate: the Property Ownership Judgment and the two sale orders.

It was after this point in time that the Debtor's actions crossed the line into vexatious territory: *first*, in raising the same non-property of the state/lack of jurisdiction arguments in

---

[100] Prior to entry of the Property Ownership Judgment in the Declaratory Judgment Action, the Debtor filed both the Trustee Removal Motion (on behalf of her children) and the Conversion Motion.  While the Trustee includes reference to these motions among the complained of actions taken by the Debtor, it is important to note that they were filed prior to a final disposition of the competing claims to ownership of the Properties in the Declaratory Judgment Action. Thus, while it is certainly fair to say that the Debtor was highly aggressive in her efforts to prevent the Trustee's continuing involvement with administration of the Properties, it cannot be said that the filing of either of those motions was vexatiously made in disregard of a prior ownership adjudication.

objecting to SLPC's final fee application; *second*, in raising the same arguments in filing a motion to pursue vacatur of the Property Ownership Judgment; *third*, in raising the same arguments in filing a motion to pursue a reopening of the bankruptcy case to pursue litigation against the Trustee; and, *finally*, in raising the same arguments as the predicate for the Affirmative Claims commenced against the Trustee Parties in the State Court Action.

Based upon the foregoing, the Court finds this factor to weigh in favor of granting relief to the Trustee.

2. <u>Debtor's Intent in Pursuing the Litigation</u>.  Turning to the second factor, while a court may reasonably infer an intent to harass from a party's engagement in repetitive litigation in disregard of a prior judgment or order, the Court does not find that the Debtor's repetitive litigation in this case was undertaken with a specific intent to harass the Trustee Parties.  Instead, the Court is convinced that the Debtor's actions, while misguided and legally infirm, were undertaken with the true belief that they were legally supportable.[101]

That said, the harder question is whether, objectively, a good faith basis existed for the actions taken.  As to this question, the Court believes that the focus of the factor is on whether, in pursuing particular relief in each instance, the litigant relied upon (a) a legal basis that, to the best of the litigant's knowledge, information, and belief, formed after an inquiry that was reasonable under the circumstances, was warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and (b) a factual basis having evidentiary support, or likely to have evidentiary support after a reasonable

---

[101] Of note, throughout all relevant proceedings, the Debtor was unrepresented by counsel.  While acting in a *pro se* capacity does not immunize sanctionable conduct, it does have a bearing upon the Court's determination of intent. Indeed, had the Debtor had the benefit of the advice of independent counsel, perhaps she would have been persuaded to take a different path than she took.

opportunity for further investigation or discovery.[102]  With that in mind, here again the Court finds

that the Debtor pursued each litigation action with the honest, albeit misguided and inaccurate,

belief that the legal positions taken were supported by the law and that the factual allegations made

could be supported.  However, the Court also finds that the Debtor's reliance on the legal premise

that she could perpetually ignore the Court's prior orders despite participating in the proceedings

and then either failing to appeal or failing to prosecute the appeal is not reasonable under the

circumstances.

Based upon the foregoing, the Court finds this factor to weigh in favor of granting relief to

the Trustee.

3.  <u>Extent of the Resulting Burden</u>.  Turning to the third factor, it is clear that the Debtor's

litigious actions have both burdened the court system and the Trustee Parties.  In the former case,

this Court, the District Court, and the Fifth Circuit Court of Appeals have all had to expend a

considerable amount of time in addressing the repetitive actions taken by the Debtor.  In the latter

case, not only have the Trustee Parties had to expend considerable amounts of time in addressing

the Debtor's actions, but they have also incurred fees and expenses that have never been recovered.

Therefore, the Court finds this factor to weigh in favor of granting relief to the Trustee.

4.  <u>Adequacy of Alternative Sanctions</u>.  Next, in considering the adequacy of alternative

sanctions, the Court makes two observations.  First, with respect to any action that the Debtor may

hereafter attempt to pursue in a forum other than this Court, the injunctive relief sought by the

Trustee is duplicative of the protections already afforded to the Trustee Parties by the *Barton*

doctrine.  Indeed, the primary reason the Court's dismissal of the Affirmative Claims was affirmed

on appeal was that the claims were pursued by the Debtor in state court without obtaining leave of

---

[102] *Cf.* Fed. R. Bankr. P. 9011(b)(2)-(3).

this Court to take such action.[103]  At no point after removal of the Affirmative Claims from the State Court Action and the dismissal of such claims on the basis of the *Barton* doctrine (among other grounds) has the Debtor attempted to pursue any litigation against any of the Trustee Parties without first obtaining leave of this Court.  Therefore, it would appear as though the *Barton* doctrine is serving its purpose as a shield against unsanctioned litigation.

Second, with respect to any action that the Debtor may hereafter attempt to pursue in the bankruptcy case, an alternative avenue for sanctions exists under Bankruptcy Rule 9011.[104] Pursuant to Bankruptcy Rule 9011, the Court is granted the latitude to impose whatever type and level of sanctions, including nonmonetary sanctions, is necessary and sufficient to deter the repetition of vexatious conduct by a litigant or comparable conduct by others similarly situated.[105] With that in mind, the Court notes that at no point has the Trustee requested sanctions against the Debtor pursuant to Bankruptcy Rule 9011.  Therefore, having not first tested the efficacy of sanctions under Bankruptcy Rule 9011, the Trustee has failed to substantiate the necessity for vexatious litigant injunctive relief.

Accordingly, the Court finds this factor to weigh in favor of denying the relief sought by the Trustee.

5. <u>Other Relevant Considerations</u>.  Finally, in considering other possible factors, a relevant consideration is whether there is a realistic risk of continuing vexatious conduct necessitating the imposition of injunctive relief.  Here, the Court is not convinced that such risk exists.  Outside of the Vexatious Litigant Motion, there are no remaining, unresolved requests for relief by the Trustee

---

[103] *See Foster*, 2023 WL 20872, at *5 ("Under [the *Barton*] doctrine, before a plaintiff can sue a bankruptcy trustee, or a court-approved professional employed by a bankruptcy trustee such as counsel for the trustee, in a forum other than the appointing court, leave of the appointing court must be obtained").

[104] *See* Fed. R. Bankr. P. 9011(c).

[105] *See* Fed. R. Bankr. P. 9011(c)(2).

or any of her professionals in the bankruptcy case and the case is ready to be re-closed. Additionally, the Court has not been made aware of the Debtor's commencement of any other litigation against any of the Trustee Parties since the time of removal of the Affirmative Claims back in 2019. In fact, ironically, the Court believes that the granting of relief sought pursuant to the Vexatious Litigant Motion may well frustrate the very purpose of the Vexatious Litigant Motion – namely, preventing any further litigation between the Trustee and the Debtor.

Consequently, the Court finds this factor to also weigh in favor of denying the relief sought by the Trustee, at least at this juncture.

Thus, having considered all of the above factors, the Court determines that the Trustee has not established a sufficient need for issuance of the injunctive relief sought against the Debtor pursuant to the Vexatious Litigant Motion. Such determination, however, is without prejudice to the right of the Trustee to re-urge the request should any further litigation be initiated by or at the direction of the Debtor against any of the Trustee Parties on account of any actions taken by the Trustee Parties in connection with the Trustee's administration of the Debtor's estate.

### *CONCLUSION AND ORDER*

For all of the foregoing reasons, the Court will (a) deny the Jurisdictional Motion, finding that the Court has jurisdiction to enter a final order in resolution of the Vexatious Litigant Motion, and (b) deny the Vexatious Litigant Motion, finding upon consideration of all relevant factors that the relief requested is unnecessary; *provided, however*, that the denial will be without prejudice to the Trustee having the right to re-urge the request should any further litigation be initiated by or at the direction of the Debtor against any of the Trustee Parties on account of any actions taken by the Trustee Parties in connection with the Trustee's administration of the Debtor's estate. Accordingly, it is hereby:

**ORDERED** that the Jurisdictional Motion is DENIED; and it is further

**ORDERED** that the Vexatious Litigant Motion is DENIED, but without prejudice to the Trustee having the right to re-urge the relief requested therein should any further litigation be initiated by or at the direction of the Debtor against any of the Trustee Parties on account of any actions taken by the Trustee Parties in connection with the Trustee's administration of the Debtor's estate.

### END OF MEMORANDUM OPINION AND ORDER ###